## Case No. 16,439.

### UNITED STATES v. TAYLOR.

### In re SEIFERT.

[20 Leg. Int. 284.]

District Court, D. New Jersey. 1863.

UNITED STATES ARMY — ENLISTMENT OF MINOR — DISCHARGE.

[Under Act Feb. 13, 1862. § 2, providing that no person under the age of 18 shall be mustered into the service, but that the oath of enlistment taken by the recruit shall be conclusive as to his age, such oath is conclusive on an application by a parent or guardian for the discharge of his son or ward as being a minor, even though the enlistment was without the parent's or guardian's assent.]

[This was a hearing on a return to a writ of habeas corpus, issued to procure the release of a minor from his enlistment in the army.]

FIELD, District Judge. The writ in this case was allowed upon the application of Henry Barlow, who alleges himself to be the uncle and acting guardian of the prisoner. Admitting the allegations set forth in the petition, and the statements made by the prisoner under oath, to be true, the facts would seem to be substantially as follows: Albert Seifert was born on the 20th day of May, 1847, at Mayence, in the duchy of Darmstadt, Germany, where his parents still reside. Some time in the month of May, 1861, he arrived in the city of New York, having been previously recommended by his parents to the care of an uncle, Henry Barlow, of Newark, N. J. He met his uncle in New York; accompanied him to Newark; resided with him for about three months; then found employment in Newark; and after some time went to the city of New York, in quest of something to do. While there, and on the 11th of August, 1862, he enlisted in Company K of the Thirty-Ninth regiment of New York volunteers, without the knowledge or consent of his parents or uncle. He has been in the service ever since; was in the battle of Gettysburg, where he received a slight wound in one of his hands, from which he has in a great measure recovered; and on the 19th of July last was brought to the United States Hospital at Newark, where he now is, in the charge and under the control of Dr. George Taylor, medical director. The prisoner admits that no deception was practised upon him at the time of his enlistment; that no persuasion was made use of to induce him to enlist; that the act upon his part was entirely free and voluntary. He admits, too, that he represented himself to the recruiting officer as older than he really was, but states at the same time, that he said he was under eighteen. Nevertheless he was enlisted; he received his bounty money, and took the oath of enlistment. He has served, so far as appears, with fidelity, and acknowledges that he has been kindly treated, and has nothing to complain of. The petitioner now claims that, as his uncle and acting guardian, he is entitled to the custody of the prisoner, and that the contract of enlistment having been entered into by a minor under the age of eighteen, ought to be deemed void.

By the fifth section of the act of congress of Sept. 28, 1850 [9 Stat. 507], it was made the duty of the secretary of war to order the discharge of any soldier of the army of the United States, who, at the time of his enlistment, was under the age of twenty-one years, upon evidence being produced to him that such enlistment was without the consent of his parents or guardian. In time of peace, such an act might have been a proper one, and its provisions very salutary. But every one can understand how, in a period of war, and more especially in such a contest as that in which we are now engaged, its operations might be most disastrous. Accordingly it was found, that it imposed upon the secretary of war. whose time and energies were already taxed to the uttermost, an immense amount of labor, and that its tendency was to derange and disorganize the whole military service. The applications for discharge became so numerous, that it was impossible to bestow upon each the care required, and the consequence was, that frauds and impositions without number were practised, and persons who were of full age at the time of their enlistment were almost daily discharged under the pretence of their having been minors. The evil was becoming very serious and embarrassing. As a remedy for this state of things, congress

passed the act of February 13, 1862 [12 Stat. 339], by the second section of which it is enacted, "That the fifth section of the act of 28th September, 1850, providing for the discharge from the service of minors enlisted without the consent of their parents or guardians, be, and the same hereby is repealed: Provided, that hereafter no person under the age of eighteen shall be mustered into the United States service, and the oath of enlistment taken by the recruit shall be conclusive as to his age."

The language of this proviso would seem to be too clear to admit of any serious doubt as to its meaning. Recruiting officers are prohibited from mustering in the service of the United States any person under the age of eighteen. If they do so knowingly, they violate the law, and are liable to punishment. But, at the same time, it was foreseen, that there might be great difficulty in ascertaining what the age of a person offering himself as a recruit really was; and if, upon representing himself to be eighteen, he should be mustered into the service, and were then allowed at any time to claim his discharge, upon the ground that he had deceived the recruiting officer as to his age, this would have been to introduce an evil of precisely the same kind as that which it was the design of this very section to cure. Therefore it was provided that the oath of enlistment taken by the recruit should be conclusive as to his age.

But it is said that however this may be, so far as the recruit himself is concerned, it never could have been the intention of congress to preclude all inquiry as to his age, when the application for a discharge is made by his parent or guardian. This is a new and important question. It is the first time that I have been called upon to give a judicial construction to this act of congress. And moreover, there are many other cases likely to arise, involving the very same principle. I have therefore examined with some care, the debates in the senate of the United States, when this section was under consideration, and propose to refer to what fell from those who took a leading part in the discussion, in order, if possible, to clear away any doubt that may exist as to what was the design of congress in the passage of this proviso.

Mr. Wilson, in introducing the section as an amendment to the bill before the senate, observed: "Many minors enter into the service of the United States. By existing law the secretary of war is compelled to discharge them when application is made. It makes a vast deal of labor, and causes disorganization in the service. The proposition is to repeal that act, but to provide that in the future minors under eighteen years of age shall not be mustered into the service, and that the mustering oath shall be conclusive on that subject. This point has been discussed in the military committee, and the section has been unanimously agreed to by the committee. I hope it will be adopted by the senate." Mr. Powell objected to that part of the amendment which provided that the oath of enlistment should be final as regards the age of the minor. "I think," he said, "it would be manifestly improper to insert such a proviso in the law. A youth under eighteen, who wished to leave his father, might go and swear that he was eighteen years of age, and that would prevent his being discharged. It will lead to false swearing and disobedience of parents." Mr. Hale said: "I think that making the oath of the minor conclusive on him is a very slight punishment for the perjury he commits. If he swears that he is eighteen when he is not he commits perjury, and may be punished by indictment; but if, instead of that, you make his oath conclusive on him, and hold him in the army, I think it is very slight punishment." Mr. Wilson, in further explanation of the amendment, said: "We propose to require an oath as to their age. They are to be given to understand that the law forbids their admission into the army, if they are under eighteen years of age; that they must take an oath in regard to their age, and that this oath is to be conclusive in regard to their age. If young men take this oath that they are eighteen years of age, and then get sick of the service, they cannot complain if when they enlisted they understood that their oath was conclusive as to their age. Unless you make that provision you might as well not act at all. I know that during the last few months men have been discharged from the service of the United States as minors, who were twenty-four or twenty-five years of age. There is no doubt about it." Mr. Powell said: "The point to which I object, is, that if a youth under eighteen shall corruptly swear that he is over eighteen years of age, his father is not to be permitted to reclaim him from the army. I do not think it right or proper to hold out this premium, as it may be called, to indiscreet and wild young men to commit perjury for the purpose of getting clear of paternal influence." Mr. Nesmith was in favor of the provision. "I believe," he said, "it will cut off very great abuses, and save us a great deal of trouble. In all these cases, where young men have enlisted, and now represent themselves as minors, and desire to procure their discharge, great expense has been incurred by the government. They have been uniformed, armed, drilled and equipped in every point as soldiers, and brought to the field at a great expense to the government; but when they arrive there, they are taken with a desire to retire from the service, and all the expense which the government has incurred in bringing them in face of the enemy is a total and entire loss. * * * Now, the question of the parent's losing the services of the young man, I do not think amounts to a great deal. It is a time when every man

who is capable of bearing arms is called upon to render service to his country. A young man who runs away from his father, and is induced to enlist, and subsequently obtains his discharge, if he violates the parental control which was over him in the first place, and joins the army, is not likely to be of much service to his parents thereafter; and I think the very best school and the very best place for him is the army, and I am in favor of returning him there."

There can be no doubt, therefore, as to what the intention of congress was in the passage of this law. It is my duty to give effect to it. The oath of enlistment is conclusive as to age. I cannot go behind it. But without reference to this act of congress, I do not see upon what ground I could, with propriety, discharge the prisoner from his enlistment, or order him into the custody of the petitioner. His parents reside abroad. The application is not made on their behalf. The petitioner is not his guardian in any sense of the term. He has no legal control over him. He is not entitled to his services. And as to the young man himself, he has no right to complain. The enlistment upon his part was a voluntary act. Nor is the service into which he has entered an unprofitable or a degrading one. On the contrary, if ever the profession of a soldier was honorable and ennobling, it is in such a war as that to which our brave volunteers are now summoned; a war waged for the Union, for the constitution, for the very life of the nation. There are worse schools, too, than the camp. Whatever its dangers and temptations may be, they can hardly be greater than those to which a youth is exposed in such a city as New York. Nor is any distinction to be made between our native-born citizens and those who, coming from abroad, have sought an asylum in our land, and enjoy the protection of our laws.

Let the prisoner be remanded to the custody of the defendant.